# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Giordan M.G., | Civ. No. 26-2585 (JWB/DTS) |
| Petitioner, | |
| v. | |
| Todd Blanche, *Acting Attorney General*; Markwayne Mullin, *Secretary, Department of Homeland Security*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

Daniel P. Suitor, Esq., Daniel P. Suitor, PLLC, counsel for Petitioner.

David W. Fuller, Esq., and Joshua Sweeney, Esq., United States Attorney's Office; and David R. Hackworthy, Esq., Department of Homeland Security, counsel for Respondents.

This case asks whether Respondents may detain a noncitizen if the arresting authorities failed to comply with the federal statutes and regulations governing the warrant-based arrest of a noncitizen who lacks lawful status. That question is not a matter of mere technical compliance. The applicable rules represent more than words on a page; they confer the authority to act. Where Respondents fail to follow the applicable provisions, they act outside the bounds of their lawfully conferred authority. Without the authority to arrest on an administrative warrant, the ensuing discretionary detention lacks a lawful basis.

Petitioner Giordan M.G. is a noncitizen who was inspected and lawfully admitted to the United States as a B-2 nonimmigrant visitor. After his lawful stay ended, he remained in the United States without authorization. Years later, he was arrested and detained by local law enforcement. While in local custody, Petitioner was arrested by Immigration and Customs Enforcement ("ICE"). At issue is whether his arrest by ICE was lawful.

Upon review of the record presented here, Petitioner was arrested in violation of the governing law. Accordingly, Respondents must immediately release him from detention.

## BACKGROUND

Petitioner is a citizen of Colombia. (Doc. No. 1, Petition ¶ 7; Doc. No. 9, Olson Decl. ¶ 4.) He entered the United States in late October 2017 as a B-2 nonimmigrant visitor. (Petition ¶ 15; Olson Decl. ¶ 4.) His visa authorized him to remain in the country until April 23, 2018, but he continued to live in the United States without authorization from the Department of Homeland Security. (Olson Decl. ¶ 4.) Petitioner does not have a criminal history. (Petition ¶ 21.)

Petitioner is the sole provider for his wife (a United States citizen) and their four children. (Petition ¶¶ 17, 21; Doc. No. 9-3 at 1.) Petitioner's youngest child, a five-month-old infant, was born with severe health complications that required neonatal intensive care. (Petition ¶ 17.)

On May 9, 2026, local law enforcement arrested Petitioner during a traffic stop and held him in custody over the weekend. (*Id.* ¶ 18.) On May 12, 2026, the officers

contacted ICE. (*Id.*; Olson Decl. ¶ 5.) ICE officers arrested Petitioner at the Bloomington

Police Department. (Doc. No. 8 at 1; Doc. No. 9-3 at 2.) ICE then detained and

transported Petitioner to the Bishop Henry Whipple Federal Building for processing and

completed a Form I-213 Record of Deportable/Inadmissible Alien. (Olson Decl. ¶¶ 5–6;

Doc. No. 9-3.)

That same day, ICE issued a Form I-247A Immigration Detainer and a Form I-200

Warrant for Arrest. (Olson Decl. ¶ 12; Doc. Nos. 9-1, 9-2.) Petitioner was served with a

Form I-862 Notice to Appear ("NTA"), charging him as removable under 8 U.S.C.

§ 1227(a)(1)(B) for remaining in the United States longer than permitted. (Olson Decl.

¶ 9; Doc. No. 9-6.) Petitioner was then transferred to the Freeborn Adult Detention

Center where he remains in custody. (Olson Decl. ¶ 10; Doc. No. 9-6 at 4.)

## DISCUSSION

### I.    Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of

the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden

of establishing, by a preponderance of the evidence, that the challenged detention lacks a

lawful basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025)

(collecting cases).

Petitioner argues his detention is unlawful because it violates the Fourth

Amendment. (Petition ¶¶ 60–63.) He also asserts that Respondents violated the

Administrative Procedure Act and the *Accardi* Doctrine because he was not arrested in

accordance with the governing law. (*Id.* ¶¶ 73–90.) Petitioner has withdrawn his Fifth

3

Amendment due process claim. (*See* Doc. No. 13.)

Petitioner challenges only the lawfulness of his present detention. He does not contest any removal order, the decision to initiate removal proceedings, or the execution of removal. Thus, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

## II.    Analysis

### A.    Statutory Arrest Authority

Petitioner claims that Respondents failed to effectuate a lawful arrest under applicable immigration law. His claim asks whether Respondents acted under the authority conferred to them by Congress. Every federal administrative agency, including ICE, "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022).

The parties agree that Petitioner is subject to discretionary immigration detention under 8 U.S.C. § 1226(a), not any form of mandatory detention. To arrest an individual pursuant to § 1226(a), ICE must rely on either a valid Form I-200 administrative warrant or conduct a proper warrantless arrest under 8 U.S.C. § 1357(a)(2). *See Arizona v. United States*, 567 U.S. 387, 407–08 (2012).

Respondents do not engage with Petitioner's § 1357(a)(2) warrantless arrest argument. Instead, Respondents assert that they do not need to rely on 8 U.S.C. § 1357(a)(2) for arrest authority because Petitioner is "lawfully detained under

4

§ 1226(a)." (Doc. No. 8 at 3.) Respondents also assert that valid Form I-200 warrant authority existed before ICE assumed custody from local law enforcement. (*Id.* at 11.) Respondents' position is not supported by the record or the governing law.

A valid Form I-200 authorizes the arrest of a noncitizen "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b). The timing matters because an NTA initiates the removal proceeding for which the Form I-200 authorizes arrest. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (recognizing that an NTA "serves as the basis for commencing a grave legal proceeding"). Therefore, a lawful § 1226(a) detention stems from the authority Congress granted in § 1226 (allowing arrest on a warrant) and Respondents' own rule in § 236.1 (authorizing arrest on an I-200 at or after issuance of a Notice to Appear).

Here, the record does not show that Petitioner's NTA was issued at or before the time that he was arrested on the I-200 warrant. There is no time stamp on the NTA. There is no affidavit from the issuing officer. The document itself is dated May 12, 2026, and states that Petitioner was "currently residing" at the Freeborn County Jail. (Doc. No. 9-6 at 4.) Petitioner was not present at Freeborn County Jail until after ICE arrested him at the Bloomington Police Department and first brought him to the Bishop Henry Whipple Federal Building for processing. Accordingly, it is probable that Petitioner was arrested before issuance of the NTA, in violation of the applicable regulation.

ICE cannot retroactively legalize Petitioner's arrest and detention by generating a charging document after conducting a warrant-based arrest. Accepting such a post-hoc fix

would effectively permit ICE to grant itself authority that it has not been given by existing statutes or regulations. Respondents also do not point to any authority authorizing a prior arrest made contrary to the governing statute and regulations. And this Court will not manufacture that authorization for them. Accordingly, because Petitioner was not validly arrested on a warrant, his detention under § 1226(a) lacks a lawful basis.

## B.    Remedy

The appropriate remedy is immediate release. As explained above, Petitioner's invalid arrest eliminates the lawful basis for his present detention under § 1226(a). Release is an appropriate remedy for detention that lacks a lawful predicate. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for unlawful executive detention). Ordering additional process without release would reduce an unauthorized arrest to a mere procedural irregularity, and would not meaningfully restore what was wrongfully taken.

Accordingly, the Petition for Writ of Habeas Corpus is granted in part, and Respondents are ordered to immediately release Petitioner. Petitioner's other habeas claims are not reached, and this Order expresses no position on their merits.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1.    Petitioner Giordan M.G.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2.    Respondents must immediately release Petitioner from custody.

3.    When Petitioner is released:

a.  **Release and Return of Property.** When Respondents release Petitioner, he must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

b.  **Return to Minnesota.** If Petitioner is currently held outside Minnesota, Respondents shall initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

c.  **Weather-Related Delay.** If weather conditions present a safety risk at the time of release, Respondents may delay physical release only for the brief period necessary to ensure safe release. Any such delay must be strictly limited and may not be used to justify continued custody where a safe alternative is available.

d.  **No Recharacterization of Custody.** Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order would require Petitioner's release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

4.    **Notice.** Within **48 hours** of entry of this order, Respondents shall file a status update confirming the time, date, and location of Petitioner's release.

5.    Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: August 14, 2026
Time: 4:00 p.m.

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge